The STATE of Ohio, Appellee,

v.

FORBES, Appellant.

[Cite as *State v. Forbes* (1991), 61 Ohio App.3d 813.]

Court of Appeals of Ohio,
Coshocton County.

No. 90–CA–23.

Decided March 8, 1991.

*Robert A. Skelton* and *Timothy France,* for appellee.

*Charles E. Mathay* and *Gregory L. Forbes,* for appellant.

MILLIGAN, Judge.

The defendant-appellant, Gregory L. Forbes ("defendant"), was charged with, *inter alia,* DUI, Coshocton Ordinance 75.01(A)(1), a mirror image of R.C. 4511.19(A)(1) (operating under the influence); and Coshocton Ordinance 75.-01(A)(3), a mirror image of R.C. 4511.19(A)(3) (blood alcohol, *per se* ).

Defendant filed a motion to suppress and a motion *in limine* attacking the chemical tests and the methodology in achieving the result. For clarity we attach the motion. (See Appendix.) The trial court issued a pretrial judgment denying relief upon grounds numbers 1, 2, 5 and 7 and set a hearing as to grounds numbers 3 and 4 on the issue of whether the RFI (radio frequency interference) survey is the same as previously considered in other cases, and ruled, as to ground number 6:

"In the absence of an indication that the State has refused to provide copies of State Certificates of Operators, etc. in discovery, for a specific factual basis for defendant's allegations, this branch of defendant's motion is denied."

Following a brief hearing, the motion to suppress was overruled, defendant pled no contest to each of the DUI charges, and was sentenced.

He appeals assigning five errors (erroneously identified by him as "issues"):

## Issue I

"The trial court erred in its denial of the appellant's motion to suppress the intoxilyzer test results of the appellant based on 'substantial' compliance with Department of Health Regulations, 3701–53–02(C)."

## Issue II

"The trial court erred in overruling the defense hearing motion to strike the entire testimony of the state's only witness regarding the RFI calibration procedures of the intoxilyzer for failure to show his qualifications under Department of Health Regulations 3701–53–05(B) & (C) as a senior operator."

## Issue III

"The trial court erred in its denial of the appellant's motions to suppress the intoxilyzer test results based on findings that there was not only substantial compliance but complete compliance with the Board of Health Regulation 3701–53–02."

## Issue IV

"The trial court erred in its denial of a suppression hearing on grounds 2, 5, 6 and 7 of defendant-appellant's suppression motion based on the finding that it was not in compliance with CRIMR. [*sic*] 47 and *Xenia v. Wallace*, 37 O.S. 3rd 216 [524 N.E.2d 889] (1988)."

## Issue V

"The trial court abused its discretion in denying the appellant an evidentiary hearing on timely filed motion to suppress which presented clear, specific, particularized grounds for suppression with supporting memorandum."

We sustain the first three assignments of error upon the authority of *Coshocton v. Davis* (Dec. 4, 1990), Coshocton App. No. 90–CA–7, unreported, 1990 WL 200350.

## IV and V

Appellant treats the fourth and fifth assignments of error with a singular argument and we accommodate.

These two assignments of error focus upon an issue increasingly vexatious to municipal court judges and attorneys prosecuting and defending DUI cases. The generic volume of such cases has exploded and has presented overload burdens upon the municipal court justice system.[1]

The need to expedite the processing of DUI cases, and the commandments of constitutional rights and protection, often appear to conflict, creating heightened tension and frustration among the participants in the system.

Although collated into a single argument by appellant, it is plain to us that the issues raised by the appellant's motion to suppress are severable and lead to different consequences.

Grounds numbers 2, 5, and 6 all address themselves to the quality of testing prescribed by regulations of the Ohio Department of Health concerning chemical testing of blood-alcohol content. They do not address the issue of probable cause for a warrantless search or seizure.

Ground number 7 purports to address itself to claims of constitutional violation in the procurement of statements.

The trial court denied the requests encompassed by these motions, concluding that they failed to comply with Crim.R. 47 and *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889.

---

1. In 1989 municipal courts processed 80,485 new drunk driving cases, as well as 2,150,337 other cases. Ohio Courts Summary, 1989, Ohio Supreme Court.

Crim.R. 47 provides:

"An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit.

"To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition."

In *Xenia v. Wallace* the Supreme Court catalogued both Crim.R. 47 and a host of cases supporting the proposition that:

"The defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure." *Xenia, supra,* 37 Ohio St.3d at 218, 524 N.E.2d at 892.

The court concluded that the defendant had the duty to:

"(1) demonstrate the lack of a warrant, and

"(2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *Xenia, supra,* 37 Ohio St.3d at 219, 524 N.E.2d at 892.

As to issues of probable cause the Supreme Court concluded that the burden of going forward with the evidence and the burden of proof befall the state.

The Supreme Court acknowledged a defect in the motion in *Xenia* in that it failed to clarify whether the illegality claimed was a violation of Constitution or "some unnamed statute or rule of common law." *Xenia, supra,* 37 Ohio St.3d at 220, 524 N.E.2d at 893.

In the case *sub judice,* grounds numbers 2, 5, and 6 of the motion to suppress do not raise an issue of "probable cause for a search or seizure" within the context of *Xenia,* or the cases of claimed constitutional violation referenced therein. They address the mechanism or methodology by which the evidence is tested and analyzed, and the qualifications of the intoxilyzer operator.

■ As to ground number 2 (alleging failure to comply with Ohio Adm.Code 3701–53–02), we conclude, as did the trial court, that the motion fails to "state with particularity the grounds upon which it is made" within the meaning of Crim.R. 47.

The process for balancing the competing interests on this issue lie in the mechanism of discovery under Crim.R. 16 and the court's supervision and enforcement thereof. An additional component in the mix is the requirement that a memorandum "containing citations of authority" be filed. Crim.R. 47.

Appellant denies that the focused sub-motions are a fishing expedition designed to impose upon the state an impractical burden of jumping through procedural hoops in the hope of appellant that upon some the state might trip.

The precise function of discovery is to accommodate the reality that the evidence a party needs to challenge a procedure is in the control of the adverse party, and he cannot frame his challenge, with the particularity contemplated by Crim.R. 47, in the absence of full and adequate discovery.

It thus well serves all of the parties, and the court, to move the exploration for bureaucratic integrity in the first instance from the courtroom to the office of the prosecutor, and the law enforcement agency. Having been granted discovery it is appropriate that the mandatory memorandum accompanying the suppression motion (or an affidavit) recite, as a minimum, an articulated suspicion that the claimed fact is true. Here the memorandum recites:

"Defendant submits that recent sworn testimony by Coshocton County Sheriff Deputies have [sic] revealed that the RFI calibration was not done properly on the intoxilyzer prior to this defendant's arrest and testing on the intoxilyzer."

As to ground number 5 (alleging intoxilyzer neither working properly nor calibrated), we are satisfied that this memorandum claim meets an "articulated suspicion" standard. It does not supply any support for the claim of ground number 6 (alleging improper licensing of the operator).

From the standpoint of appellate review it is important that this court be able to determine whether the motion to suppress is motivated by a legitimate concern that the pretrial rights of the defendant have been compromised or the less noble anticipation that the procedures can be frustrated and delayed to the ultimate benefit of the defendant.

This balance of competing interests would be more easily determined if the process followed the following chronology:

(1) Discovery sought and received. Crim.R. 16.

(2) If discovery denied, judicial oversight, including appropriate orders. Crim.R. 16(E)(1) and (2).

(3) If discovery still denied, judicial sanctions imposed upon the offending party, including the potential of dismissal of the charges.

(4) Discovery having been completed the motion to suppress should contain the grounds "with particularity" and the memorandum (or affidavit) should include a rationale—an articulated suspicion—that supports the claimed fact. Crim.R. 47.

As to ground number 7, which does raise constitutional self-incrimination and counsel issues, we hold that the motion's conclusory language does not fulfill the threshold demonstration requirements of *Xenia v. Wallace.* It fails to raise the grounds upon which the validity of the search and seizure is challenged in such manner as to give the prosecutor notice of the basis of the challenge in order that he might meet his burden of going forward with the evidence and burden of proof.

We recognize that in this several analysis we have not addressed the question of whether, as to non-constitutional issues, the burden of going forward with the evidence befalls the moving party or the responding party (the state). That decision awaits another day, we having concluded that in the case *sub judice* the appellant has failed to demonstrate with sufficient particularity the grounds upon which ground number 6 of his motion is made.

We therefore sustain the fourth and fifth assignments of error as to ground number 5 and remand for further proceedings relative thereto.

The judgment of the Coshocton County Municipal Court is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

PUTMAN, P.J., and GWIN, J., concur.

APPENDIX

Aug. 21, 1990

Now comes the Defendant, through his attorney, with this motion to suppress and motion in limine to suppress evidence obtained from the improper seizure and alcohol testing of the defendant, including:

1. Tests of Defendant's coordination and sobriety, alcohol level, including chemical tests of Defendant's alcohol.

2. Statements taken from or made by the Defendant.

Defendant submits that the burden is upon the State to justify the warrantless seizure of the Defendant and evidence taken from the Defendant, and to show why the above evidence should not be suppressed based and prohibited from the prosecutor's use at trial upon the following grounds:

1. The tests to determine the Defendant's alcohol or drug level were not taken voluntarily and were unconstitutionally coerced when obtained due to the threat of R.C. 4511.191.

2. The police officer administering the Defendant's test of alcohol did not conduct the test with a breath testing machine in accordance with the R.C. 4511.19 (B) and the Ohio Department of Health Regulations governing such testing and or analysis, as set forth in Chapter 3701–53–02 of the Ohio Administrative Code, including the operator's checklist instructions issued by the Ohio Department of Health included in the appendices to OAC 3701–53–02.

3. The breath testing instrument was not properly surveyed to determine radio frequency interference by two qualified police officers utilizing two radios and surveying from all the required axis and frequencies for the hand held, mobile and base radios required by OAC 3701–53–02(C) and Appendix G.

4. The operator of the breath testing instrument did not ensure that the Defendant's test was conducted free of any radio transmissions from within the affected RFI zone as determined by a properly performed RFI survey OAC 3701–53–02(C) and Appendix G.

5. The machine or instrument analyzing Defendant's alcohol level was not in proper working order and not calibrated in accordance within the time and manner required by OAC 3701–53–02(C) and Appendix G.

6. The intoxilyzer operator was not properly licensed to operate the instrument analyzing the Defendant's alcohol level, nor was he supervised by a senior operator in accordance with OAC 3701–53–07. The person or persons calibrating the instrument analyzing the Defendant's alcohol level were not properly licensed to calibrate the instrument in accordance with OAC 3701–53–07.

7. Statements from the Defendant were obtained in violation of his Fifth Amendment right against self-incrimination and both his Fifth and Sixth Amendment right to counsel as applicable under the Fourteenth Amendment.