RHINES, Plaintiff,

v.

BAILISS, Defendant.

2005-Ohio-7160.]

Cleveland Municipal Court, Ohio.

No. 2004 CVI 20228.

Decided July 29, 2005.

6

Ella Rhines, pro se.

Robert Bailiss, pro se.

PAULINE H. TARVER, Judge.

{¶ 1} This case came before the court on the Small Claims docket. On May 18, 2005, Magistrate William F.B. Vodrey presided over the trial in this case.

Present were both plaintiff and defendant. Also testifying was defendant's wife, Sovanara Bailiss. All witnesses were duly sworn. After due consideration, the magistrate's decision is hereby approved and adopted.

Findings Of Fact

{¶ 2} On the morning of October 27, 2003, plaintiff and another Jehovah's Witness, Judy Muesella, were going door-to-door in Cleveland, talking to people about their faith and distributing religious literature. Eventually, they came to defendant's home at 3153 West 137th Street. Just after plaintiff and Muesella stepped up onto the defendant's porch, the defendant's wife, Sovanara Bailiss, opened the door, and without warning, the couple's dog, a 35–pound Shar Pei named Omar, ran out and jumped up on plaintiff. The plaintiff testified that when Mrs. Bailiss tried to control the dog, it snapped at her; Mrs. Bailiss denied this. The dog then bit the plaintiff on her left leg near the ankle, puncturing it twice, almost to the bone. The plaintiff did not suggest, and there was no evidence to show, that Mrs. Bailiss purposely loosed the dog to attack plaintiff.

{¶ 3} The plaintiff immediately sought medical treatment at Lakewood Hospital's emergency room. Her wounds bled profusely, but were taped and not stitched. The plaintiff had to remain at the hospital for about seven hours and did not remain overnight. She later learned from the city dog warden that the dog had had all of its shots and that the plaintiff would not need to receive anti-rabies shots, although on her doctor's advice, she did receive tetanus shots.

{¶ 4} The defendant, Omar's owner, was not at home when the dog bit the plaintiff. He testified that the dog may have thought that it was protecting Mrs. Bailiss from intruders; at the time, she had lived in the house for only five days. The dog is nine years old and has never bitten anyone else, before or since, although it can become excited when someone comes to the door. Before the trial in this case, the defendant pleaded no contest to a city of Cleveland criminal charge of failure to control his dog and was fined $50.

{¶ 5} Medicare denied the plaintiff's claim, and she has no other health or medical insurance. The plaintiff still has "twinges and tingles" in her leg from time to time, and her shin occasionally gets scaly where she was bitten. She does not require a cane or walker.

{¶ 6} In her complaint, the plaintiff seeks $3,000. However, she testified that her medical bills actually total $1,087.17, including emergency-room care, medication, x-rays, and an office visit. The plaintiff also seeks compensation for pain and suffering.

Conclusions of Law

{¶ 7} At trial, a court must determine the credibility of witnesses and the weight to be given the evidence. *In re Lieberman* (1955), 163 Ohio St. 35, 56

O.O. 23, 125 N.E.2d 328; *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 36 O.O.2d 288, 219 N.E.2d 221. The quality of evidence is more important than its quantity. If trial testimony or other evidence is in conflict, the court must decide which to believe and which to disbelieve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. All witnesses in this case were generally credible.

{¶ 8} Human beings and dogs have had a special relationship with one another for many thousands of years. Dogs are commonly known as "man's best friend," and Ohio law recognizes this remarkable bond. *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224. Most dogs are harmless, many lovable, but some are neither. Notwithstanding the strong and enduring emotional connection that many people form with them, dogs are private property to a qualified extent and are subject to state action up to and including confiscation and even destruction when necessary. *Sentell v. New Orleans & Carrollton R.R. Co.* (1897), 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169.

{¶ 9} R.C. 955.28(B) provides:

The owner * * * of a dog is liable in damages for any injury, death or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner * * *.

{¶ 10} Under Ohio law, a trespasser is one who enters and remains on the premises of another without permission, either express or implied, and without consent, invitation, or other right, for his own purposes or for no apparent purpose. *Dayton v. McLaughlin* (1988), 50 Ohio App.3d 69, 552 N.E.2d 965. Examples of trespassers include passersby, criminals, unattended children, and the like. Generally speaking, a landowner owes no duty to a trespasser except to refrain from wanton, willful, or reckless misconduct that is likely to injure him. *Soles v. Ohio Edison Co.* (1945), 144 Ohio St. 373, 29 O.O. 559, 59 N.E.2d 138. Whether an injured person is a trespasser is a legal question. A newspaper delivery boy who is bitten by a dog after the boy takes a shortcut through a homeowner's yard after delivering a paper there is not a trespasser, for instance, even if the shortcut was not necessary for the performance of his duties. *Dayton*, supra.

{¶ 11} Plaintiff, while distributing religious literature, was not a trespasser under Ohio law, as she had a qualified right to be on defendant's property for that purpose. Jehovah's Witnesses take literally the proselytizing exhortations of the Bible, and door-to-door canvassing is mandated by their religion. *Murdock v. Pennsylvania* (1943), 319 U.S. 105, 108, 63 S.Ct. 870, 87 L.Ed. 1292.

Jehovah's Witnesses and others have always enjoyed a First Amendment right to distribute religious literature. *Marsh v. Alabama* (1946), 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265. The Supreme Court of the United States has held, " '[H]and distribution of religious tracts is an age-old form of * * * religious activity * * * [and] has the same claim to protection as the more orthodox and conventional exercises of religion.' " *Watchtower Bible & Tract Society of N.Y., Inc. v. Stratton* (2002), 536 U.S. 150, 161, 122 S.Ct. 2080, 153 L.Ed.2d 205, quoting *Murdock v. Pennsylvania* (1943), 319 U.S. 105, 108–109, 63 S.Ct. 870, 87 L.Ed. 1292. Door-to-door canvassing has also historically been very important in American democratic discourse. *Schneider v. Irvington* (1939), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155. The freedoms guaranteed by the First Amendment "are delicate and vulnerable, as well as supremely precious in our society." *National Assn. for the Advancement of Colored People v. Button* (1963), 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405. They are "fundamental to the protection of our democracy and are not to be interfered with lightly." *Greer v. Columbus Monthly Publishing Corp.* (1982), 4 Ohio App.3d 235, 4 OBR 426, 448 N.E.2d 157.

{¶ 12} Clearly, however, the " 'right to communicate and persuade [does] not include the right to trespass' on another's rights." *Cleveland v. Sundermeier* (1989), 48 Ohio App.3d 204, 549 N.E.2d 561, quoting *Cleveland v. Egeland* (1986), 26 Ohio App.3d 83, 26 O.B.R. 258, 497 N.E.2d 1383. "[E]ach householder [has] the full right to decide whether he will receive strangers as visitors." *Martin v. Struthers* (1943), 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313. The defendant's wife did not ask the plaintiff to leave the premises, but if she had, the plaintiff would have been obliged to comply. A homeowner may also post a "no solicitors" sign to avoid unwanted religious, political, or commercial contacts, or even Halloween trick-or-treaters. *Watchtower; Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73. There was no evidence that defendant had done so here.

{¶ 13} Because the plaintiff was exercising her constitutional right to free speech and was not trespassing on the defendant's property when she was attacked by his dog, the defendant is liable in damages for the injuries plaintiff sustained. R.C. 955.28(B).

{¶ 14} The defendant disputes that the plaintiff has incurred medical bills totaling $1,087.17, but submitted no evidence to the contrary. The plaintiff seeks damages for pain and suffering, but the Small Claims division of this court does not typically award such damages, R.C.1925.02, and the court is not persuaded by the evidence that it would be appropriate to do so in this case. The plaintiff has otherwise proven her case by a preponderance of the evidence.

**10**

## Holding

{¶ 15} Accordingly, judgment is granted for plaintiff in the amount of $1,087.17.

So ordered.